IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| REYA C. BOYER-LIBERTO | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.  1:12-cv-00212-JKB |
| FONTAINEBLEAU CORPORATION, et al. | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is an action brought by Plaintiff, Reya C. Boyer-Liberto ("Plaintiff"),

against her former employer, Fontainebleau Corporation t/a Clarion Fontainebleau Hotel

("Clarion") and its owner, Leonard Berger, M.D. ("Berger") (Clarion and Berger hereinafter are

collectively referred to as "Defendants").  In her Complaint, Plaintiff, who is African-American,

alleges that she was the victim of a racially hostile work environment and retaliation under Title

VII, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981.[1]

Plaintiff's entire claim rests on her allegation that Trudi Clubb ("Clubb"), the

weekend restaurant manager, who Plaintiff considered to be her co-worker and not her

supervisor, treated Plaintiff in what Plaintiff perceived to be a racially hostile manner and, on

either one or two occasions (Plaintiff's own evidence is conflicting), used a racially derogatory

---

[1]      Counts I and III (race discrimination (harassment) and retaliation under Title VII) are
brought solely against the Clarion.  Counts II and IV (race discrimination (harassment) and
retaliation under §1981) are brought against both the Clarion and Berger, individually.

term towards her.  Plaintiff further alleges that she was terminated in retaliation for complaining about Clubb's behavior.

Defendants have filed a Motion for Summary Judgment asking this Court to enter judgment in their favor on all claims raised in Plaintiff's Complaint.  As the discussion below establishes, accepting Plaintiff's evidence as true for the purpose of this Motion, it is clear that Plaintiff is unable to establish a *prima facie* case of either unlawful racial discrimination or retaliation under Title VII or §1981.  Plaintiff's own deposition testimony and interrogatory answers, viewed in the light most favorable to her, completely fail to establish both that the conduct about which she complains was so severe or pervasive to alter her conditions of employment and create a racially hostile work environment and that Plaintiff had an objectively reasonable good faith belief that a hostile work environment existed at the Clarion.  The entry of summary judgment in favor of Defendants on all of Plaintiff's claims is appropriate.

## FACTS

Clarion is an oceanfront resort and convention hotel located in Ocean City, Maryland.  Deposition of Richard Heubeck (Apx. A) at 8.  The complex includes a conference center and banquet facilities, two oceanfront restaurants, a nightclub, four distinct bars, hotel rooms and suites, and other amenities.  Apx. A at 11-12.  Berger is the owner, president, chief executive officer, and operating manager of the Clarion.  Deposition of Leonard Berger, M.D. (Apx. B) at 7-8.  He has been operating the hotel for approximately twenty-seven (27) years. Apx. B at 8.

Plaintiff commenced her employment with the Clarion on August 4, 2010 in the Food & Beverage Department.  Apx. A at 29-30; Deposition of Reya Boyer-Liberto (Apx. C) at

2

289-90. Defendant Clarion's Answers to Interrogatories (Apx. D), at Answer No. 16, p. 11.

Plaintiff was initially assigned to be a morning hostess in the dining room. Apx. A at 30; Apx. C at 295; Apx. D at 11. She immediately complained about her shift, stating that she did not want to be a hostess and wanted to work nights. Apx. A at 30; Apx. C at 294-95, 299; Apx. D at 11. In response, Plaintiff was switched to the night shift, and was trained as a server. Apx. A at 30; Apx. C at 299-301; Apx. D at 11. As a server, Plaintiff made many mistakes. Apx. A at 32-6; Apx. D at 11. She also behaved unprofessionally, clashed with other employees and supervisors, disregarded Clarion policy and supervisors' directions, and responded poorly to criticism. Apx. D at 11-12.

Recognizing that Plaintiff would not succeed as a server/hostess, Food & Beverage Director Richard Heubeck ("Heubeck") agreed to give her a chance as a bartender, which was the position Plaintiff desired. Apx. A at 49-50, 52; Apx. D at 12. This was despite the fact that Plaintiff did poorly on the bartender test and did not have the requisite three-years experience. Apx. B at 24, 28-29; Apx. D at 12; Deposition of Mark Elman (Apx. E) at 34-35. Plaintiff's bartending skills, however, were poor. She had trouble filling drink orders; she did not know the proper ingredients for many mixed drinks and made no apparent effort to learn the recipes. She was unable to keep up with the pace at the bar, and had to be paired with another bartender. When working the bar in tandem, Plaintiff relied on her co-bartender to make drinks, while she spent most of her time chatting with guests. Apx. A at 59-60, 108-110; Apx. D at 12;

In September, with the summer season ended, the Clarion closed the outside bar, and staffed the other bars with only one bartender. Plaintiff was assigned to work alone at the Pub Bar. When that bar would get busy, Plaintiff was unable to keep up. Consequently,

3

Plaintiff was transferred to the banquet department on September 7.  Apx. A at 73, 109-110; Apx. D at 12.

Plaintiff, however, was also unsuccessful in banquets.  Apx. A at 73, 110; Apx. D at 13.  Banquets are high volume work and require the staff to move quickly and efficiently, being proactive, and pitching in wherever needed.  Plaintiff did not respond to the work or pace. She was slow and dragged, necessitating other employees to complete her assignments.  The banquet managers repeatedly observed Plaintiff standing around doing nothing while other staff members worked.  After less than two weeks in banquets, the managers told Heubeck that they did not want Plaintiff on their staff.  Apx. A at110; Apx. D at 13.

Around this same time, on September 17, 2010, Plaintiff complained to Clarion's Human Resources Director Nancy Berghauer ("Berghauer") that Clubb had made derogatory and racial statements to her.  Deposition of Nancy Berghauer (Apx. F) at 43-46, Exs. 8, 9; Plaintiff's Answers to Interrogatories (Apx. G) at Answer Nos. 4, p. 4.  Plaintiff described an incident in which Plaintiff had cut through the kitchen to avoid a confrontation with the head bartender, with whom Plaintiff was having a dispute, and did not hear Clubb call out to her. According to Plaintiff, Clubb then "burst through the [kitchen] doors [into the dining room] yelling . . . 'hey, girl with the hearing problems, don't you hear me calling you?'"  The next day, Clubb approached Plaintiff and reprimanded her for leaving the floor without permission. As Clubb walked away, Plaintiff allegedly heard Clubb mumble the term "porch monkeys."  In her complaint to Berghauer, Plaintiff did not identify any other racial comment made by Clubb to or regarding her on either that occasion or at any other time.  The only other comments allegedly made by Clubb that Plaintiff relayed to Berghauer were that Clubb once told her that she was "pretty like Stacy but I don't know if you're nice;" that Plaintiff had overheard Clubb

on one occasion tell the head bartender (allegedly in reference to Plaintiff), "I'm going to make that girl sorry," and "she'll lose her job;" and that Clubb referred to the Hispanic housekeepers as "Chihuahuas". Apx. F at Ex. 9, DEF 00038-39.

        In her deposition, Plaintiff testified that the incident with Clubb regarding Plaintiff cutting through the kitchen occurred on September 14, 2010, and Clubb's reprimand of her for that transgression occurred the next day, September 15. Apx. C at 326-27, 391-98. Contrary to her September 17, 2010 complaint to Berghauer, the written documentation of her complaint that she signed on September 18, 2010 (see below), her Complaint at ¶¶ 11, 18, 25, and her Answers to Interrogatories (*See* Answers to Interrogatory Nos. 4 and 5), Plaintiff testified in her deposition that she heard Clubb use the term "porch monkey" on two occasions—during the September 14 and September 15 exchanges, not just during their September 15 talk. Apx. C at 353-364, 371-80; 391-97. Nevertheless, in her deposition testimony Plaintiff made it unequivocally clear that the first time Clubb ever made a racially derogatory statement to her was on September 14 ("porch monkey"), and, notably, other than the "porch monkey" term, which, according to Plaintiff, Clubb allegedly said once or twice over that two-day period of September 14 and 15, Clubb never made any other racially derogatory statement to or about Plaintiff at any time during Plaintiff's employment with the Clarion. Apx. C at 391, 407-08. Moreover, the only other specific allegedly derogatory statement that Plaintiff has ever attributed to Clubb was her reference to the housekeepers as "Chihuahuas". [2]

---

[2]      In its Interrogatories to Plaintiff, the Clarion specifically asked Plaintiff to identify each disparaging comment about the ethnicities of other employees ever made by Clubb. The only comment Plaintiff identified was "Chihuahua," allegedly made in reference to Hispanic employees. *See* Apx. G at Answer No. 7, p. 5. Plaintiff subsequently supplemented her Answer to Interrogatories by adding a general allegation that Plaintiff knew Clubb to make off color comments and jokes regarding the ethnicity of guests and co-workers and on one occasion made an off-color comment directed at Asian customers. Plaintiff provided no further specificity to this assertion. *See* Apx. H at Answer No. 7, pp. 5-6.

Plaintiff's Supplemental Answers to Interrogatories (Apx. H) at Answer No. 7, p. 5-6; Apx. F at Ex. 9 at DEF 00039. Significantly, Plaintiff has not alleged that any other Clarion employee engaged in any racially derogatory or offensive conduct. *See* Apx. G at Answer Nos. 4 and 5, pp. 4-5.

Berghauer typed up her notes of Plaintiff's oral complaint to her. Apx. F at 44-45. She notified General Manager Mark Elman ("Elman"), Heubeck, and Berger about Plaintiff's allegations against Clubb. Apx. F at 48; Apx. E at 21-22; Apx. A at 62-64. The next day, Elman met with Plaintiff regarding her complaint. Apx. E at 23-24. He presented her with Berghauer's typed notes and asked Plaintiff to review the document and let him know if it was correct and comprehensive. Plaintiff read the document and asked Elman to make a number of revisions, which he did. Apx. E at 22-24, 46-47, Ex. 9; Apx. F at 45-46, Ex. 9. Plaintiff then signed the revised document. Apx. E at 22-24, 46-47, Ex. 9.

Elman, Heubeck and Berger each separately questioned Clubb about Plaintiff's allegations. Apx. E at 50; Apx. A at 61-69, 111-13; Apx. B at 40; Deposition of Gertrude Clubb (Apx. I) at 43-44. Clubb emphatically denied ever using the term "porch monkey," stating that she had never even heard of that term until she learned about Plaintiff's accusations against her. Apx. A at 61-62; Apx. B at 40; Apx. E at 50; Apx. I at 39-43. Clubb also denied Plaintiff's assertion that she had referred to the housekeepers as Chihuahuas. Apx. B at 40; Apx. I at 43, 47. While he did not conclude that Clubb had made the comments or any derogatory statements as alleged by Plaintiff, Heubeck, nevertheless, on September 18, gave Clubb a written warning reminding her to be cautious in her language and treatment of employees. Apx. A at 68-69, Ex. 4.

6

Plaintiff first came to Berger's attention on the night of September 17,[3] when he was notified of her complaint. Apx. B at 19-20, 44. Berger, in turn, inquired of Heubeck about Plaintiff. *Id.* Heubeck explained that during her brief tenure at the Clarion, Plaintiff had been unsuccessful in each position she had worked, and Heubeck was at wits end where to place her. Apx. A at 73, 75-76; Apx. B at 19-23. Upon learning about Plaintiff's failure in a variety of positions, Berger questioned Heubeck why Plaintiff was still employed if she was not performing up to Clarion expectations. Heubeck responded that he had tried to give her an opportunity to succeed, but that banquets department was her third strike. Apx. B at 19-23, 28-29; Apx. A 73, 75-76.

Over the weekend, Berger discussed Plaintiff's performance with Elman, and on September 20, with both Berghauer and Elman. Apx. B at 36-39. He stated that, given Plaintiff's consistently poor record of performance over her six weeks of employment, the Clarion could not continue to employ her. Both Elman and Berghauer cautioned Berger about terminating Plaintiff at that time because she had just raised her complaint about Clubb's alleged racially hostile treatment of her. Berger responded that no time was a good time to terminate an employee and that the Clarion could not and should not continue to employ someone who was performing so poorly. He emphasized that the decision to terminate Plaintiff's employment had nothing to do with her complaint, and he could not continue her employment simply because she raised a complaint. Apx. B at 37-39, 44; Apx. E at 57-58; Apx. F at 65-66. Finally, Berger admonished his managers for not terminating Plaintiff sooner, when it became evident that she was not working out. Accordingly, the decision was made to terminate Plaintiff's employment. Apx. B at 37-39, 44; Apx. E at 57-58.

---

[3]    Berger previously had met Plaintiff and occasionally had seen her at the hotel, but had no real interaction with her or knowledge of her performance prior thereto. Apx. B at 18-19; Apx. C at 285-87.

7

On September 21, 2010, Plaintiff was notified that her employment with the Clarion was terminated. Apx. F at 66. Two days later, on September 23, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging that during her employment, she was "discriminated against with respect to harassment based on [her] race (African American)" and was discharged in retaliation for engaging in protected activity. Apx. C at 67, Ex. 7. On or about December 15, 2011, the EEOC issued Plaintiff a notice of right to sue. Plaintiff, thereupon, filed the instant action.

## ISSUES

1.      Should summary judgment be entered in Defendants' favor on Plaintiff's discriminatory racial harassment claims (Counts I and III, respectively) where the facts, when viewed in the best light for Plaintiff, fail to establish that Plaintiff was subjected to severe or pervasive racial harassment?

2.      Should summary judgment be entered in Defendants' favor on Plaintiff's retaliation claims (Counts II and IV, respectively) where the facts, when viewed in the best light for Plaintiff, fail to establish that Plaintiff had an objectively reasonable good faith belief that a hostile work environment existed at the Clarion at the time she complained to the Human Resources Director about Clubb's conduct?

## ARGUMENT

## STANDARD OF REVIEW

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby Inc.*, 477 U.S.

242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the basis for its summary judgment motion. *Id.* at 323 (1986). Once the movant sufficiently supports its summary judgment motion, the burden shifts to the nonmoving party to go beyond the pleadings and present evidence through affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of fact for trial. *Id.* at 324. *See also* Fed. R. Civ. P. 56(e). A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248-49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex Corp.,* 477 U.S. at 324; *Anderson,* 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991). The facts, as well as justifiable inferences to be drawn from the facts, must be viewed in the light most favorable to the nonmoving party. *Matushita Elec. Indust. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, has an affirmative obligation

9

to prevent factually unsupported claims and defenses from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

The Supreme Court has emphasized that the ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. This requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87. A genuine issue is established only if a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *Anderson.*, 477 U.S. at 248. Bare speculation by the nonmovant will not defeat summary judgment. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (stating that "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion"); *Fobian v. Storage Tech. Corp.*, 959 F. Supp. 742, 746 (E.D. Va. 1997) (holding that an allegation of discrimination without evidence of disparate impact "is insufficient to withstand summary judgment"), *aff'd* 217 F.3d 838 (4th Cir. 2000).

It also bears noting that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (internal citations omitted).

## I.

**SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS ON
COUNTS I AND III (DISCRIMINATORY RACIAL HARASSMENT)
IS WARRANTED WHERE THE FACTS FAIL TO ESTABLISH
SEVERE OR PERVASIVE RACIAL HARASSMENT**

In Counts I and III of her Complaint, Plaintiff alleges that while she was employed at the Clarion, she was subjected to unlawful racial harassment in violation of

Title VII and §1981, respectively, through Clubb's "persistent . . . disparaging remarks" about Plaintiff's race, "peak[ing] on September 15, 2010 when Ms. Clubb referred to [Plaintiff] as a 'porch monkey.'"[4]  Complaint at ¶¶18 and 25.  As the discussion below establishes, Plaintiff cannot prevail on her claims.  The evidence, viewed in the light most favorable to Plaintiff, completely fails establish the existence of severe and pervasive racially harassing conduct, which is a critical element of an unlawful harassment claim. Summary judgment in favor of Defendants is appropriate.

To prevail on a discriminatory hostile work environment claim under Title VII and §1981, "a plaintiff must show that the conduct: (1) was unwelcome; (2) was based on her protected characteristic, such as race; (3) was so severe or pervasive that it altered the conditions of plaintiff's employment and created an abusive work environment; and (4) was imputable to the employer." *Ziskie v. Mineta*, 547, F.3d 220, 224 (4th Cir. 2008); *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998); *Cross v. Bally's Health & Tennis Corp.*, 945 F.Supp. 883, 885 (D. Md. 1996).

---

[4]      In Paragraphs 19 and 26-27 of Counts I and III, respectively, Plaintiff also appears to be alleging that she was terminated because of her race.  She has produced no evidence of a discriminatory termination, specifically, that she was treated any differently than non-African American employees.  Rather, a review of these allegations reveals that Plaintiff is alleging that she was terminated because she complained of racial harassment.  To the extent that Counts I and III include a claim for racially discriminatory termination for raising a complaint of harassment, those Counts are duplicative of her retaliation claims in Counts II and IV, and cannot proceed.

In addition to the reasons set forth below, summary judgment on Counts I and III, further, should be entered with respect to Defendant Berger, because Plaintiff has conceded that Berger did not engage in any unlawful racial harassment of her and did not contribute to any alleged racially hostile work environment. *See* Apx. C at 286-87; Apx. G at Answer Nos. 4 and 5, pp. 4-5. *See Tillman v. Wheaton-Haven Recreational Ass'n, Inc.*, 517 F.2d 1141, 1145 (4th Cir. 1975) (holding that directors or managers can be held personally liable under § 1981 only when they "intentionally cause a corporation to infringe the rights secured by" § 1981); *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004) (dismissing employee's complaint for failure to state a claim for individual liability against supervisor under § 1981 where employee did not allege that the supervisor had personally acted to infringe the employee's § 1981 rights).  Here, Plaintiff's allegations against Berger relate to her retaliation claims in Counts II and IV, not her harassment claims in Counts I and III.

As this Court repeatedly has observed, "the standard for proving an abusive work environment is intended to be a high one." *Karim v. Staples, Inc.*, 210 F.Supp.2d 737, 752 (D. Md. 2002) citing *Porter v. Nat'l Con-Serv, Inc.*, 51 F.Supp.2d 656, 659 (D.Md. 1998); *Norris v. City of Anderson*, 125 F.Supp.2d 759, 766 (D.S.C. 2000); *see also Mandengue v. ADT Sec. Sys., Inc.*, 2012 WL 892621, at *30 (D. Md. Mar. 14, 2012)("plaintiffs must clear a high bar in order to satisfy the severe or pervasive test.") "For a hostile work environment claim to lie there must be evidence of conduct 'severe or pervasive enough' to create 'an environment that a reasonable person would find hostile or abusive.'" *Von Gunten v. Maryland*, 243 F.3d 858, 870 (4th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc*, 510 U.S. 17, 21 (1993)).

In determining whether the harassment was sufficiently severe or pervasive to establish a hostile work environment, courts consider the "totality of the circumstances," not just isolated incidents. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). This assessment includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, at 21 (1993)). The conduct, furthermore, must be "extreme." *Faragher*, 524 U.S. at 778. Incidents that would objectively give rise to bruised or wounded feelings will not satisfy the severe or pervasive standard. *Id.* Rather, the employer's conduct must be so objectively offensive as to alter the "conditions" of the victim's employment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

12

Courts repeatedly have recognized that anti-discrimination laws such as Title VII were not designed to purge all harassing or annoying behavior in the workplace; only that which renders the workplace objectively and subjectively hostile or abusive. *Hartsell v. Duplex Products Inc.*, 123  F.3d 766, 773 (4th Cir.1997) ("Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace."); *Scannell v. Bel Air Police Dept*, 968 F.Supp. 1059, 1063 (D.Md. 1997) ("Title VII is not designed 'to purge the workplace of vulgarity.'" (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995))). Thus, the Supreme Court has instructed, "ordinary tribulations of the workplace, 'such as the sporadic use of abusive language . . . and occasional teasing' are not actionable." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275. *See also Clark County School District v. Breeden*, 532 U.S. 268 (2001)("A recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'")

Applying these principles, the courts repeatedly have refused to find the existence of a hostile work environment where the alleged conduct consisted of a handful of isolated comments, including racially derogatory epithets. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (explaining that "instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments" (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994))). Thus, in *Skipper v. Giant Food, Inc.*, 68 F. App'x 393, 398 (4th Cir. 2003), the Fourth Circuit found that a manager's harassment of an African-American employee by following him around and referring to him by a racial slur on one occasion, coupled with the plaintiff's daily exposure to racist graffiti and overhearing other employees using the same slur thirteen times in a four year period, was not pervasive

13

conduct to establish an unlawfully discriminatory hostile work environment. *See also,*

*Roberts v. Fairfax Cnty. Pub. Sch.*, __ F. Supp. 2d __, No. 1:10-cv-1074, 2012 WL 380130,

at *5 (E.D. Va. Feb. 6, 2012) (complaint failed to state a claim for unlawful racial

harassment where supervisor allegedly made racial slurs on two occasions including

whispering in plaintiff's ear: "I am going to kill you nigger," and two weeks later telling

plaintiff "that nigger can't hear, she can't hear." Court noted, "Though both comments were

deplorable, their isolation is uncontroverted. Such limited use of a racial slur is insufficient

to permeate [plaintiff's] work environment 'with discriminatory intimidation, ridicule, and

insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment."); *Jenkins v. City of Charlotte*,

No. Civ.A. 3:03CV44, 2005 WL 1861728, at *12-13 (W.D.N.C. July 26, 2005)(supervisor's

use of the word "nigger" in the presence of plaintiff, an African-American employee, and

reference to "kicking [the plaintiff's] black ass," were insufficient to establish a hostile work

environment where supervisor did not interact with plaintiff on a daily basis, and eight

interactions over two months did not amount to pervasive conduct. "[A]lthough the

incidents alleged by [the supervisor] were reprehensible . . . they were not sufficiently

continuous to be deemed pervasive under the law."); *Hampton v. J.W. Squire Co.*, No.

4:10cv13, 2010 WL 3927740, at *3-4 (W.D. Va. Oct. 5, 2010)(supervisor's reference to

African-American employee as "nigger" three times during the course of one conversation

did not rise to the level of severe or pervasive).

There is no bright line rule for the "number of times a supervisor or employer

can use a racial slur while addressing an employee without creating a hostile work

environment for Title VII purposes." *Hampton*, 2010 WL 3927740, at *3. Instead, courts

"attempt to distinguish colorable allegations of pervasive and general use with isolated instances that, although reprehensible, do not rise to the level of severity necessary to alter the conditions of an employee's work environment." *Roberts v. Fairfax Cnty. Pub. Sch.*, *supra*, 2012 WL 380130, at *5 (E.D. Va. Feb. 6, 2012).

Assuming the truth of Plaintiff's evidence for the purposes of this summary judgment motion, and viewing that evidence in the light most favorable to Plaintiff, the evidence falls woefully short of what is required to satisfy the high severe and pervasive standard of a hostile work environment claim. At most, Plaintiff's evidence establishes that Clubb made a racially derogatory statement, "porch monkey," on no more than two occasions—September 14 and September 15, 2010. Apx. C at 326-27, 391-98. Notably, even this deposition testimony of Plaintiff conflicts with her multiple prior statements in which she asserted that Clubb made the "porch monkey" comment only once—on September 15, *see* Apx. G at Answer No. 4, p. 4; Complaint at ¶¶ 11, 18, and 25, and Apx. F, Ex. 9 at DEF 00038,[5] and did so in a mumble as she was walking away from Plaintiff. *See* Ex. 9 at DEF 00038.

A review of her deposition testimony and Interrogatory Answers further reveals that the only other alleged statements that Plaintiff has identified Clubb making, which Plaintiff perceived to be racial or disparaging, were Clubb's alleged comment to Plaintiff when they first met that "you are pretty like Stacy, but she's nice;" Apx. C at 319, Clubb's comparison of Plaintiff's skin tone to that of other African Americans, and remarks that Plaintiff, the most junior restaurant employee, Apx. C at 292-93, "remember [her]

---

[5]     Additionally, in her complaint to Berghauer, two days after the alleged incident, Plaintiff explained that she heard Clubb mumble "porch monkey" as Clubb was walking away from her. Apx. F, Ex. 9 at DEF 00038. In contrast, in her deposition, over two years after the alleged incident, Plaintiff testified that Clubb said "porch monkey" while looking at Plaintiff, in the restaurant dining floor. Apx. C at 381.

15

place," that Clubb would "teach [her] a lesson," and that Clubb was "going to get [her]." Apx. G at Answer Nos. 4 and 5, pp. 4-5. These alleged comments, on their face, are either racially neutral (there is no evidence that these comments were race-based) or were not derogatory or harassing. As such, no reasonable inference can be drawn that these comments were made in reference to Plaintiff's race or to harass Plaintiff because of her race. *See Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, JKB-10276, 2011 WL 4549177, at *11 (D. Md. Sept. 28, 2011) (this Court refused to consider facially race-neutral comments because plaintiff failed to provide any evidence concerning the allegations, explaining as follows: "Plaintiff offers no evidence that [the facially race-neutral comments] relate to race at all; her contention to the contrary is based on speculation and therefore cannot meet the evidentiary standard required at the summary judgment stage.")

Likewise, Plaintiff's efforts to simply paint Clubb's conduct with a non-specific broad brush by asserting general allegations that Clubb made racially offensive comments will not salvage her claim. Indeed, despite being directly asked in the Interrogatories to set forth, with specificity, all facts concerning her claim of racial harassment and each allegedly racially derogatory comment made and conduct engaged in by Clubb, Plaintiff only identified the alleged "porch monkey" statement made on September 15,[6] and the racially-neutral comments identified above.[7] ISeeI Apx. G at Answer Nos. 4, 5, 7, pp. 4-5; Apx. H at Answer No. 7, p. 5-

---

[6]    In her Interrogatory Answers, while Plaintiff states that on September 14, Clubb chased Plaintiff through the dining room while screaming at her, Plaintiff's answers assert that Clubb made the "porch monkey" statement *only* on September 15, *not* September 14. *See and compare* Apx. G, Answer No. 4 with Answer No. 5.

[7]    In Clarion's Interrogatories to her, Plaintiff was asked to state all facts that concern, refer, and/or relate to her claim that she was subjected to racial harassment, fully identifying and describing each alleged incident of racial harassment, including dates of each such incident, Apx. G at Interrogatory No. 4, p. 4. She also was asked to state all facts that concern, refer, and/or relate to her allegations in her Complaint that Clubb treated her with hostility, threatened her, and engaged in

16

6. Plaintiff has not provided any details in support of her general allegations of racially

discriminatory, derogatory, or harassing conduct, nor has she identified the frequency, severity,

or content of the alleged comments.[8]  Such details are critical to her claim.  *See Skipper v.*

*Giant Food, Inc.*, 68 F. App'x 393, 398 (4th Cir. 2003) (lack of details supporting the

allegations was fatal to the hostile work environment claim: "This court has held that a plaintiff

pressing a hostile work environment claim must substantiate his claim with reasonable

specifics about the alleged incidents that underlie the claim." *Id.* (citing *Carter v. Ball*, 33 F.3d

450, 461-62 (4th Cir. 1994) ("Furthermore, [the plaintiff's] testimony that Lt. Campbell

generally reprimanded Carter publicly but spoke with Carter's white co-workers in private is

not substantiated by accounts of specific dates, times or circumstances.  Such general

allegations do not suffice to establish an actionable claim of harassment.")); *See also Linton,*

*supra*, 2011 WL 4549177, at *11 ("Without specific evidentiary support, Plaintiff's bare

---

a persistent course of conduct in which Clubb made disparaging remarks and negative comments
about Plaintiff's African American ethnicity, fully identifying and describing each alleged incident
by Clubb upon which Plaintiff's allegations and claims in her Complaint are based, including dates
of each such incident. Apx. G at Interrogatory No. 5, p. 4-5.  Plaintiff's Answers to these
Interrogatories simply identify very general, non-specific allegations of comments by Clubb and the
handful of alleged comments identified above, which Plaintiff perceived to be racial. Apx. G at
Answer Nos. 4 and 5, pp. 4-5.  Moreover, in her Answer to Interrogatory No. 7, which asked
Plaintiff to state all facts concerning her allegation that Clubb made disparaging comments about the
ethnicities of other employees, and with respect to each disparaging comment, fully identify and
describe the comment and the date on which it was made, Plaintiff simply responded that Clubb
referred to Hispanic employees as "Chihuahuas", and that she knew Clubb to make off color
comments and jokes regarding the ethnicity of guests and coworkers and on one occasion, Clubb
made off color comments directed at Asian customers. Apx. H at Answer No. 7, p. 5-6.

[8]      Indeed, where Plaintiff attempts to provide some purportedly factual details to her claims,
her "facts" are inherently flawed.  For example in Answer to Interrogatory No. 4, Plaintiff asserts,
"Ms. Clubb's comments occurred in *July*, August and September." Apx. G at Answer No. 4, p. 4
(emphasis added).  Notably, Plaintiff did not start working at the Clarion until August 4, 2010 and
met Clubb shortly after she began. Apx. A at 29-30; Apx. C at 289-90, 318.  Moreover, Plaintiff's
employment was terminated on September 21, 2010.  Apx. F at 66.  Clearly, given that she claims
that the alleged racially offensive comments occurred during her employment but no later than
September 15, her Answer stating that the comments occurred in July, August and September is both
factually wrong and lacks the requisite detail needed to establish a hostile work environment claim.

17

assertion of differential treatment cannot support a claim of hostile work environment." (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)).

Plaintiff's evidence, viewed in the light most favorable to her, does not describe a "workplace permeated by racism, by threats of violence, by improper interference with work, or by conduct resulting in psychological harm." *Jordan, v. Alt. Res. Corp.*, 458 F.3d 332, 340 (4th Cir. 2006) (citing *Faragher*, 524 U.S. at 787-88); *see also Faragher*, 524 U.S. at 788 (the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment"). As such, Plaintiff is unable to clear the high severe and pervasive bar necessary to establish a *prima facie* case of unlawful harassment. Summary judgment in favor of Defendants on Plaintiff's claims of discriminatory racial harassment, therefore, is appropriate.

### III.

**SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S RETALIATION CLAIMS IS APPROPRIATE WHERE PLAINTIFF'S EVIDENCE FAILS TO ESTABLISH AN OBJECTIVELY REASONABLE BELIEF THAT A HOSTILE WORK ENVIRONMENT EXISTED AT THE CLARION**

Counts II and IV of her Complaint allege that Plaintiff was terminated in retaliation for complaining to Clarion's Human Resources Director that Clubb had racially harassed her. As the discussion below establishes, Plaintiff's retaliation claims must fail. Critically, Plaintiff is unable to establish that an objective person would view Clubb's alleged comments as sufficiently severe or pervasive to create an unlawful hostile work environment at the Clarion. Without such proof, Plaintiff cannot satisfy an essential element of her retaliation claim—that she engaged in protected activity.

Plaintiff's race-based retaliation claims are brought under both Title VII and §1981. The legal principles governing retaliation claims are the same for both statutes.

18

*Jordan*, 458 F.3d at 344 (citing *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004)).  To establish a *prima facie* case of retaliation, Plaintiff must prove "(1) that she engaged in a protected activity; (2) that the defendant took a materially adverse action against her; and (3) that a causal connection existed between the protected activity and the materially adverse action." *Session v. Montgomery Cnty. Sch. Bd.*, No. 10-1827, 2012 WL 208037, at *2 (4th Cir. Jan. 25, 2012) (citing EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005)).  *See also Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 67-70 (2006) (other citations omitted).

Protected activity can be either "opposition" or "participation". *Navy Fed. Credit Union*, 424 F.3d at 406.  Here, Plaintiff's Complaint asserts that she engaged in "opposition" activity.  Activity under Title VII's "opposition clause" involves "an employee's verbal or written opposition to her employer's conduct which she believes is discriminatory." *Wainright v. Carolina Motor Clubb, Inc.*, No. 1:03 CV 01185, 2005 WL 1168463, at *10 (M.D.N.C. Apr. 27, 2005) (citing 42 U.S.C. § 2000e-3(a)).  This "includes internal complaints about alleged discriminatory activities." *Session, supra,* 2012 WL 208037, at *2.

In order for a complaint to be a "protected activity," however, the employee raising the complaint must both subjectively believe that she is complaining about conduct that is unlawful, *and* that belief must be *objectively reasonable. See Jordan*, 458 F.3d at 338-39).  *See also Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (D. Md. 2011) ("For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that that the conduct . . . she opposes constitutes unlawful discrimination under Title VII.") (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (per

19

curiam)(resolving the objective reasonableness of a Title VII plaintiff's beliefs through the summary judgment process, thereby making the issue a question of law).

Thus, while Plaintiff does not have to prove that there was an *actual* hostile work environment, there must be sufficient evidence in the record upon which a jury can rely to reach a conclusion that Plaintiff had a reasonable objective belief that a hostile work environment existed at the Clarion. Without such evidence, Plaintiff's complaint to Human Resources is not considered "protected activity," and is insufficient to establish a retaliation claim under Title VII or §1981. *See Jordan*, 458 F.3d at 342 ("Objectively reasonable employees can and do recognize that not every offensive comment will by itself transform a workplace into an abusive one. Therefore, it sometimes will not be reasonable for an employee to believe that the isolated harassing event he has witnessed is a component of a hostile workplace that is permeated with discriminatory intimidation, ridicule, and insult."). Stated another way, employees who oppose practices not made unlawful by Title VII or §1981 do not engage in protected activity unless their belief that the practice was unlawful under those statutes is objectively reasonable. *Breeden*, 332 U.S. at 270.[9] "Objectively reasonable," means "reasonable in light of the facts of the case and current, substantive caselaw." *Wainright*, 2005 WL 1168463, at *10 (citing *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003)). *See also Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 n.2 (11th Cir. 1998) ("If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.").

---

[9]     In contrast, unlike opposition, when the protected activity alleged is participation in a Title VII proceedings that activity is protected regardless of whether the activity is reasonable. *Cumbie v. Gen. Shale Brick, Inc.*, 302 F. App'x 192, 194 (unpublished)(4th Cir. 2008)(citing *Glover v. S.C. Law Enforcement Div.*, 170 F.3d 411, 413-14 (4th Cir. 1999).

Applying this principle, courts repeatedly have found that employee complaints of harassment were not "protected activity" under Title VII and §1981 because the conduct about which the employees complained fell far short of the severe and pervasive requirement. For example, in *Jordan, supra,* an African-American employee complained to his employer about racist comments made by a co-worker. Specifically, while watching a television special about the "DC Snipers", the co-worker exclaimed, in Jordan's presence, "They put those two black monkeys in a cage with a bunch of black apes and let the apes f-k them." Jordan also learned from other employees that the same co-worker previously had made similar comments. He reported the incident to management. A month later, Jordan was fired, and subsequently brought an action for retaliation under Title VII and §1981. The Fourth Circuit affirmed this Court's grant summary judgment in favor of the defendant employer. The court explained that the comment about "black apes," was a far cry from alleging an environment severe or pervasive that altered the conditions of Jordan's employment. Consequently, the court concluded that Jordan had not engaged in "protected activity" because he did not have a reasonable, objective belief that he was complaining about a hostile work environment. In its subsequent decision denying Jordan's petition for rehearing *en* banc, the Fourth Circuit explained its holding as follows:

> As the law stands, Title VII does not create a claim for every employee who complains about the potential for Title VII violations or about other employees' isolated racial slurs. It protects an employee who opposes 'any practice made an unlawful employment practice," . . . or who "reasonably believes" he is opposing a practice made an unlawful practice by Title VII [citations omitted].

> Of course nothing in our ruling condones the contemptible comment made by the coworker in this case.  We have simply held that complaining about an isolated racial slur is not opposition protected by Title VII.

467 F.3d 378, 380 (2006). *See also Bharadwaja v. O'Malley,* Civil Action No. RDB 04-3826, 2006 WL 2811257 (D.Md. 2006), aff'd, 228 F. App'x 365 (4th Cir. 2007)(Court found that plaintiff of Indian heritage did not have a objectively reasonable belief that discriminatory hostile work environment existed where (1) on several occasions after September 11, his Muslin supervisor stated that "after all that has been done to Muslins, they have a right to react and retaliate;" (2) supervisor asked plaintiff and other employees of Indian descent whether "it was in your people's culture to be rude to people; (3) plaintiff believed supervisor insinuated that Indian employees favored hiring Indian candidates. Since Plaintiff's harassment complaint to his employer was not "protected activity," summary judgment against plaintiff on his retaliation claim was granted); *Crews v. Ennis, Inc.,* 4:12-cv-00009, 2012WL 5929032 (W.D.Va. Nov. 27, 2012)(court found that male employee lacked triable Title VII claim for opposing a sexually hostile work environment against female employees, concluding that a reasonable person in plaintiff's position and circumstances would not view two sexually offensive comments by a male supervisor regarding female pubic hair and male genital fondling as sufficiently severe or pervasive, or as indicative of continued harassment. Summary judgment, therefore, was granted in favor of defendant employer on plaintiff's retaliation claim).

Assuming the truth of Plaintiff's evidence for the purposes of this summary judgment motion only, and viewing that evidence in the light most favorable to her, it is readily apparent that Plaintiff did not have a reasonable objective belief that a hostile work environment existed at the Clarion. This is particularly true when analyzing the evidence in the record under the current, substantive law in the Fourth Circuit, which sets an extremely high bar for establishing a racially hostile work environment. As explained above and as Plaintiff's probative evidence reveals, Plaintiff's racial harassment complaint to Human Resources rested

22

almost exclusively on one racial slur allegedly made by Clubb in a moment or, at most, two moments[10] of anger about Plaintiff's workplace transgressions—including leaving the restaurant floor without permission, cutting through the kitchen, and ignoring Clubb calling out to her. Apx. C at 353-64, 371-80, 391-97. The other "evidence" relied upon by Plaintiff in support of her harassment complaint to Human Resources consisted of racially-neutral comments and, at most, non-specific general allegations. Apx. G at Answer Nos. 4 and 5, pp. 4-5; Apx. H at Answer No. 7, pp. 5-6. Moreover, the evidence establishes that during Plaintiff's six weeks of employment at the Clarion, Clubb and Plaintiff only occasionally interacted and only when both Plaintiff and Clubb were working in the restaurant or pub (Clubb only worked on Thursday, Friday, and Saturday). Affidavit of Trudi Clubb (Apx. J) at ¶ 5; Apx. I at 38-39.

Furthermore, in determining whether Plaintiff had an objective reasonable belief that a hostile work environment existed at the Clarion, the alleged offensive conduct Plaintiff attributes to Clubb must be viewed as co-worker conduct, not supervisory conduct. This is because Plaintiff emphatically testified that she viewed Clubb as a "co-worker" and not her supervisor. Apx. C at 319-21. Indeed, Plaintiff asserted that she had absolutely no idea that Clubb was the weekend restaurant manager, and that as far as she understood, Clubb had no authority over her and Plaintiff did not take direction from Clubb. Apx. C at 319-24. Thus, while the evidence fails to support an objective reasonable belief of the existence of a hostile work environment even if the alleged conduct attributed to Clubb was considered to have been engaged in by a supervisor, it is patently clear that no objective reasonable belief could exist where the objectionable comments were believed by Plaintiff to be made by a co-worker.

---

[10]     Whether the "porch monkey" comment was said once or twice is an internal conflict in Plaintiff's version of the facts. *See supra* at 5, 14-15.

No objective person would reasonably believe that the conduct Plaintiff alleges Clubb to have engaged in was severe and pervasive and somehow transformed the Clarion work environment into a hostile workplace, permeated with discriminatory intimidation, ridicule, and insult. Consequently, when Plaintiff reported Clubb's alleged comments to Human Resources, she was not engaged in "protected activity" within the meaning of either Title VII or § 1981. As such, Plaintiff is unable to establish the requisite first prong of her *prima facie* case of retaliation. The entry of summary judgment in favor of Defendants on Plaintiff's retaliation claims in Counts II and IV of her Complaint is warranted.

## CONCLUSION

The evidence, when viewed in the light most favorable to Plaintiff, completely fails to establish (1) that the conduct about which Plaintiff complains was so severe or pervasive to alter her conditions of her employment and create a racially hostile work environment, and (2) that Plaintiff could have had an objectively reasonable good faith belief that a hostile work environment existed at the Clarion. The entry of summary judgment in favor of Defendants on all of Plaintiff's claims is appropriate.

Respectfully submitted,

December 17, 2012

_____/s/_____
Harriet E. Cooperman (Federal Bar No. 00729)
Heather R. Pruger (Federal Bar No. 17884)
SAUL EWING LLP
500 East Pratt St., 8th Floor
Baltimore, Maryland 21202
Telephone:  (410) 332-8974
Facsimile:  (410) 332-8973
hcooperman@saul.com
hpruger@saul.com

Attorneys for Defendants,
Fontainebleau Corporation and
Leonard P. Berger, M.D.

24