IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **REYA C. BOYER-LIBERTO,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-12-212 |
| **FONTAINEBLEAU CORP.** *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

*I. Background*

Plaintiff Reya C. Boyer-Liberto ("Liberto") filed suit against her former employer, Fontainebleau Corporation t/a Clarion Resort Fontainebleau Hotel ("Clarion"), and its owner, president, and chief executive officer, Leonard P. Berger, M.D. (Compl., ECF No. 1.) She asserted claims for racial discrimination and retaliation based, respectively, upon an allegedly racially hostile work environment and upon her termination shortly after she filed an internal complaint of racial discrimination. (*Id.* 1-2.) Pending before the Court is Defendants' motion for summary judgment. (ECF No. 43.) The matter has been thoroughly briefed (ECF Nos. 46, 51), and no hearing is required, Local Rule 105.6 (D. Md. 2011). The motion will be granted.[1]

*II. Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to

---

[1] Because of the disposition of the case on summary judgment, the Court will deny as moot Defendants' motion for discovery sanctions (ECF No. 34).

current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.  *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).  Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

### III. Undisputed Facts

Liberto began her employment with Clarion in Ocean City, Maryland, on August 4, 2010.  (Pl.'s Opp'n, Ex. B, Dep. Heubeck 29:18—30:4, May 24, 2012; Ex. D, Dep. Liberto 289:18—290:1, Oct. 18, 2012, ECF No. 46.)  The Clarion is an oceanfront hotel containing guest rooms, a conference center, several restaurants and bars, a banquet facility, and a nightclub.  (*Id.* Dep. Heubeck 11:20—12:18.)  When Liberto began her employment, the Clarion's food and beverage director, Richard Heubeck, informed her she would train in each of the hotel's food and beverage positions in order to gain an understanding of the hotel's operations.  (*Id.* Dep. Liberto 280:6-12; 293:8-17.)  She began her training as a morning restaurant hostess.  (*Id.* Dep. Liberto 280:6—281:8.)  Soon, she also picked up shifts as a cocktail waitress.  (*Id.* Dep. Liberto 300:2-18.)

Liberto subsequently worked as a restaurant server, as a bartender, and as a server in the banquet facility. (*Id.* Dep. Liberto 313:11—314:4.)

On September 17, 2010, Liberto made a complaint to Clarion's director of human resources, Nancy Berghauer, to the effect that Trudi Clubb, the weekend restaurant manager, had on September 14 used a racially derogatory term when berating her for improperly cutting through the kitchen and for not responding to Clubb when she tried to speak to Liberto. (*Id.* Ex. J, Signed statement, Sept. 17, 2010.) Specifically, Liberto said that Clubb had called her a "porch monkey" (*id.*), considered to be an ethnic slur by African Americans.[2] Berghauer notified Berger, Heubeck, and Clarion's general manager, Mark Elman, of Liberto's complaint.

---

[2] Liberto's statement to Berghauer alleges only one instance of Clubb's use of the term, "porch monkey." In her deposition two years later, she testified Clubb used the term twice. (Dep. Liberto 380:8—381:19; 397:13-17.) For the purpose of deciding the pending motion for summary judgment, the Court presumes Clubb used the term twice, but that Liberto only informed Berghauer of one such usage. Thus, Defendants' reaction to Liberto's complaint must be judged upon the information they possessed at the time of their reaction.

The Court notes that in Liberto's opposition to Defendants' motion for summary judgment, she recites in her "Statement of Facts" certain statements in Liberto's answers to interrogatories and presents them as "facts." For example, Liberto states "Clubb also made disparaging remarks regarding the ethnicity of Plaintiff and her coworkers." (Pl.'s Opp'n 3.) Similarly, Liberto states Clubb "compared Plaintiff's skin tone to that of another African American employee, . . . routinely referred to Hispanic employees as 'Chihuahuas,' . . . [and] often reminded Mrs. Liberto to 'remember [her] place.'" (*Id.*) These statements are vague as to time, place, and identity of the hearer (even indicating Clubb said these things to Liberto in July 2010 when she did not start work there until August 2010) and contrast with the one date-specific statement in her answers to interrogatories to the effect that on September 15, 2010, Clubb referred to Liberto as a "porch monkey." (*Id.* Ex. F, Ans. Interrog. No. 4.) Moreover, whether Liberto's answers to interrogatories were based on her personal knowledge is questionable given the qualification she placed on her responses, "The information supplied in these Answers to Interrogatories is not based solely upon the knowledge of the executing party, but includes the knowledge of the party's agents, representatives and attorney, unless privileged." (Ans. Interrog. at 1.) Thus, the Court concludes that the "facts" drawn by Liberto from her answers to interrogatories to support her claims of Clubb's routinely referring to Hispanic housekeepers as Chihuahuas, comparing Liberto's skin tone to another African American employee, and frequently reminding her to "remember [her] place," cannot be reliably viewed by the Court as meeting the requirements of Rule 56. Therefore, on these points, Liberto's answers to interrogatories comprise inadmissible hearsay, unsuitable as support for opposition to a motion for summary judgment. *See Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) (excluding portions of affidavits and depositions consisting "primarily of unattributed rumors"); *Duff v. Lobdell-Emery Mfg. Co.*, 926 F. Supp. 799, 802-03 (N.D. Ind. 1996) ("The mere existence of the answers to interrogatories does not make them acceptable evidence supporting a summary judgment motion"; defendant's answers to interrogatories not admissible since not founded upon personal knowledge and merely hearsay). *See also* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A *Federal Practice and Procedure* § 2722, at 373-74 (1998) (answers to interrogatories supporting or opposing motion for summary judgment may be relied upon "as long as they satisfy the other requirements in Rule 56 and contain admissible material"). As a result, the only evidence considered by the Court on the question of whether Liberto was subjected to a racially hostile working environment consists of Liberto's deposition testimony regarding the two incidents in which Clubb allegedly called Liberto a "porch monkey."

(*Id.* Ex. K, Email string.) Elman met with Liberto on September 18 to discuss her complaint; he also presented her with Berghauer's typed notes, which Liberto revised and then signed. (*Id.*) Clubb was separately questioned by Elman, Heubeck, and Berger about Liberto's accusations. (*Id.* Ex. E, Dep. Clubb 43:18—44:7.) She denied using the term, "porch monkey." (*Id.* 47:3-6.) Heubeck regarded Liberto's accusation as a rumor, but he nevertheless dealt with it as a matter to be taken seriously and on September 18 gave Clubb a written warning to be cautious in her language and in her treatment of employees. (*Id.* Dep. Heubeck 61:11—65:5; Ex. P, written warning.) Heubeck had worked with Clubb for five or six years at the time of the events in question and had never heard Clubb use racial epithets. (Dep. Heubeck 87:1-3,11-19.)

Over the weekend, on September 17, 18, and 19, Berger discussed Liberto with Heubeck and Elman. (*Id.* Ex. C, Dep. Berger 19:13-16, 28:9-20, 32:10-18, May 24, 2012.) Berger also discussed Liberto with Berghauer on September 20. (*Id.* Ex. A, Dep. Berghauer 51:7-11, 56:1-8, May 25, 2012.) After receiving Heubeck's report of Liberto's unsatisfactory job performance in all positions in which she had worked at the Clarion (*id.* Dep. Berger 19:18—23:17; Dep. Heubeck 73:9-18, 75:16—76:10), and after reviewing Liberto's personnel file with Elman (*id.* Dep. Berger 24:7-11, 34:11-19, 36:9-21), Berger determined Liberto's employment should be terminated (*id.* Dep. Berger 44:6-19). Liberto was notified on September 21 that her employment with Clarion was terminated. (*Id.* Dep. Berghauer 66:7-17.) She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 23 alleging discrimination due to racial harassment and retaliation for engaging in protected activity due to her discharge. (Defs.' Mot. Summ. J. Ex. C-7, EEOC charge, Sept. 23, 2010, ECF No. 43.) The EEOC issued a right-to-sue letter to Liberto (Compl. Ex. 1, Notice of Right to Sue, Dec. 15, 2011), who timely filed the instant lawsuit.

## IV. Analysis

### A. *Racial Discrimination – Counts One and Three*

Counts One and Three, brought under Title VII (42 U.S.C. § 2000e *et seq.*) and 42 U.S.C. § 1981, respectively, are analyzed identically on their merits. Thus, where the focus is on disparate treatment due to racial discrimination, evaluation of the evidence is the same regardless of whether the claim is brought under Title VII or under 42 U.S.C. § 1981. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 n.4 (4th Cir. 2005) (citing *Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003)); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). A plaintiff may demonstrate she was subjected to a racially hostile work environment by proving she experienced (1) unwelcome conduct, (2) based upon the plaintiff's race, (3) that was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment" and (4) "is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (internal quotation marks and citations omitted).

To decide this motion, the Court assumes as true Liberto's deposition testimony that Clubb twice called her a "porch monkey" and does not question that the term is highly offensive to African Americans. Given Clubb's position in Clarion's management structure, the first, second, and fourth elements of the standard of proof have been satisfied. However, Liberto fails to show the conduct at issue was "sufficiently severe or pervasive to alter [Liberto's] conditions of employment and to create an abusive work environment." The Court considers her claim in light of "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citations omitted). "[I]solated incidents (unless extremely serious) will not

amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The two incidents of use of a racial epithet, assuming they occurred as Liberto testified, simply do not comprise either pervasive or severe conduct, however unacceptable they are. The Court compares the evidence in this case to that in *Anderson v. G.D.C., Inc.*, 281 F.3d 452 (4th Cir. 2002), *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179 (4th Cir. 2000), and *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126 (4th Cir. 1995), and concludes the conduct at issue here does not rise to the level of conduct found to be severe or pervasive in those Fourth Circuit cases. In *Anderson*, the Court noted that the plaintiff, who had sued for sexual harassment, "was subjected, on a daily basis, to verbal assaults of the most vulgar and humiliating sort." 281 F.3d at 459. In *Conner*, the plaintiff's claims of sexual harassment were amply supported by daily, humiliating incidents to which the plaintiff's male coworkers were not subjected and job requirements that the plaintiff, but not her male coworkers, was expected to meet. 227 F.3d at 197-99. And in *Amirmokri*, the plaintiff's claims of harassment based on his national origin were viable given the near-daily verbal insults to which he was subjected and the less favorable job assignments he received compared to his coworkers. 60 F.3d at 1131. *Compare Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 339-40 (4th Cir. 2006) (concluding isolated racist comment was "a far cry from alleging an environment of crude and racist conditions so severe or pervasive that they altered the conditions of [plaintiff's] employment"). Liberto attempts to argue that the two incidents occurred within a six-week span of time and that, if one extrapolates into the future, then it is evident she would be able to satisfy the frequency factor. (Pl.'s Opp'n 12.) The Court, however, will not engage in speculation about what might have occurred if Liberto had had a substantially longer tenure there. *See*

*Jordan*, 458 F.3d at 341 (court "cannot simply *assume*, without more, that the opposed conduct will continue or will be repeated unabated").

The Court concludes Defendants have established that no genuine dispute of material fact exists on Liberto's claims of racially hostile work environment and that they are entitled to judgment as a matter of law on Counts One and Three.

### B. *Retaliation – Counts Two and Four*

Liberto has also asserted that she was terminated in retaliation for her complaint regarding Clubb in violation of Title VII and § 1981. A plaintiff may establish a *prima facie* case of retaliation by proving three elements: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) the adverse employment action is causally linked to the protected activity. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005). The second and third elements are indisputable. Liberto's termination is clearly an adverse employment action, and the close temporal proximity between Liberto's complaint and her termination establish the third element of the *prima facie* case.[3] Defendants, however, contest the first element.[4] They contend that, even though Liberto made a complaint to Clarion of discriminatory conduct, she did not possess the requisite objectively reasonable belief to support her complaint. Rather, Defendants argue, she only had a subjective belief in the worth of her complaint and that is insufficient. (Defs.' Opp'n 19-20.)

Although it is not necessary that an employee's underlying discrimination claim be meritorious to succeed on a retaliation claim, s*ee Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 357 n.1 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490

---

[3] That close temporal proximity establishes causality in the *prima facie* case, however, does not mandate a finding of causation on Liberto's ultimate burden of persuasion.

[4] Defendants have not argued under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), that they had a legitimate, nondiscriminatory reason for Liberto's termination even though abundant evidence exists on that point.

7

U.S. 228 (1989), it is necessary that an employee have an objectively reasonable belief that the employer committed an unlawful employment practice, *see Navy Fed. Credit Union*, 424 F.3d at 406; *Greene v. A. Duie Pyle, Inc.*, 170 F. App'x. 853, 856 (4th Cir. 2006) (unpublished). As in *Jordan*, "no objectively reasonable person could have believed that the [plaintiff's work environment] was, or was soon going to be, infected by severe or pervasive racist, threatening, or humiliating harassment." 458 F.3d at 341. "Objectively reasonable employees can and do recognize that not every offensive comment will by itself transform a workplace into an abusive one." *Id.* at 342. Consequently, Liberto lacked an objectively reasonable belief that she was actually being subjected to unlawful harassment, and Defendants are correct that the absence of an objectively reasonable belief by Liberto defeats the first element of the *prima facie* case, *i.e.*, that Liberto's complaint was protected activity. Therefore, Defendants have shown that no genuine dispute as to any material fact exists with respect to Liberto's claim of retaliation and that they are entitled to judgment as a matter of law on Counts Two and Four.

*V. Conclusion*

The Defendants have established their entitlement to summary judgment on all counts of the complaint. A separate order will issue.

DATED this  4th  day of April, 2013.

BY THE COURT:

/s/
James K. Bredar
United States District Judge